Robert V. Towle

                                        Case No. 15-cv-117-SM
        v.                              Opinion No. 2019 DNH 173

Warden, New Hampshire State Prison


# O R D E R

Petitioner Robert V. Towle has filed this action, pursuant
to 28 U.S.C. § 2254, challenging the legality of his present
incarceration pursuant to his 2013 convictions for sexually
assaulting his son, J.T., and for being an accomplice to sexual
assaults of J.T. by two other individuals.  See § 2254 Pet.
(Doc. No. 1), as amended by Doc. Nos. 9-1, 65, 67, 91, 123
(collectively "Petition").  Before the Court are two motions for
summary judgment (Doc. Nos. 133, 139), filed by the Respondent,
the Warden of the New Hampshire State Prison, and Towle's
objections (Doc. Nos. 158, 161) to those motions.


## Background[1]

Petitioner was convicted on January 29, 2013, of four
counts of aggravated felonious sexual assault ("AFSA") for

---

[1]The background set forth in this section has been gleaned
from the record before, and decisions of, the state courts
involved in Towle's trial, post-conviction litigation, and
appeals.  See Cullen v. Pinholster, 563 U.S. 170, 181 (2011)
("Review under § 2254(d)(1) is limited to the record that was
before the state court that adjudicated the claim on the
merits.").

engaging in fellatio and anal penetration with his minor son,
J.T., and four counts of criminal liability for the conduct of
another for being an accomplice to the sexual assaults of J.T.
by Edna Jodoin and Katie Wilmot, after a jury trial held in the
New Hampshire Superior Court, sitting at Coos County ("CCSC"),
State v. Towle, Nos. 08-S-289, 09-S-96, -97, -99 ("Towle
Crim."). See generally Pet. (Doc. No. 1, at 1); State v. Towle,
111 A.3d 679, 681 (N.H. 2015) (citations omitted).[2]  The court
sentenced Petitioner on March 11, 2013 to serve 57 - 114 years
in prison, and ordered that he have no contact with J.T. and
Petitioner's other minor son.  See Towle, 111 A.3d at 681.

Prior to trial, Petitioner waived his right to counsel and
indicated he wished to represent himself.  The trial court held
a two-hour hearing on May 1, 2012, pursuant to Faretta v.
California, 422 U.S. 806, 835 (1975), to determine whether
Petitioner's waiver of his right to counsel was knowing,
intelligent, and voluntary.  See generally May 1, 2012 Faretta
Colloquy Hr'g Tr. ("Faretta Tr.") (Doc. No. 19).[3]  The CCSC

---

[2]This was Petitioner's second trial on these offenses.  See
State v. Towle, 35 A.3d 490 (N.H. 2011).  The jury convicted
Towle after his first trial, and the New Hampshire Supreme Court
reversed the convictions, finding that the trial court had
improperly denied Towle the right to represent himself at trial.
See id. at 494.

[3]Respondent filed this and other relevant transcripts as
part of an addendum (Doc. No. 19) to its June 26, 2018 Motion to
Dismiss (Doc. No. 18).  Those documents are maintained
conventionally in the Clerk's office.

concluded that Petitioner's waiver was knowing and voluntary, and it approved a partial representation plan proposed by Petitioner and his attorney. Under that plan, Petitioner would represent himself "from the moment the jury [was] sworn until the moment the jury retire[d] to begin deliberations, during which period Attorney [Joseph] Fricano [was] appointed and act[ed] as standby counsel." Id. at 65; see also id. at 7-8, 12, 13, 55. Prior to the jury being sworn in, and after the jury retired to deliberate, Petitioner was represented by Attorney Fricano. See id.

The New Hampshire Supreme Court ("NHSC") affirmed Petitioner's convictions on direct appeal but reversed the no-contact order imposed at sentencing. See Towle, 111 A.3d at 682. Petitioner's sentence remains otherwise intact. Id. at 690.

On April 2, 2015, Petitioner filed his Petition in this Court. On August 28, 2015, the Court issued a preliminary review order, identifying fourteen proposed grounds for relief in the petition, and directing Petitioner to either: 1) file a motion to amend his petition asserting the federal nature of each of the proposed grounds for relief and demonstrating that each of those federal claims has been exhausted in the state courts; or 2) file a motion to stay this civil action to allow him to exhaust his state court remedies on his federal claims. See Aug. 28, 2015 Order (Doc. No. 5).

Thereafter, Petitioner filed a motion to amend (Doc. No. 9) his Petition. The Court entered an Order (Doc. No. 13) granting the motion and finding that Petitioner had exhausted the federal grounds for Claims 1-14. Petitioner then filed two additional motions to amend (Doc. Nos. 65, 67), and a motion to stay this action (Doc. No. 85) to allow him to exhaust state court remedies for the federal claims raised in those two motions to amend. The Court granted Petitioner's motion to stay. See June 14, 2017 Order (Doc. No. 88).

Subsequently, Petitioner filed a motion to lift the stay (Doc. No. 90), and a fourth motion to amend (Doc. No. 91) the Petition. The Court lifted the stay on January 9, 2018 and entered an Order identifying ten new federal claims (identified as Claims 15 - 24) raised in Petitioner's second, third, and fourth motions to amend. See Feb. 15, 2018 Order (Doc. No. 117) (approving Jan. 16, 2018 R&R (Doc. No. 100)). The Court granted the motions to amend, to the extent they alleged violations of Petitioner's rights under federal constitutional law. See id. On February 1, 2018, this Court entered an Order (Doc. No. 107) granting another stay in this matter to allow Towle to again return to the state courts to exhaust claims alleging that his trial and appellate counsel in the state criminal proceedings had denied him the effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights.

On May 31, 2018, Petitioner filed a motion to lift the stay (Doc. No. 123) which this Court construed, in part, as a fifth motion to amend the Petition to add three claims asserting ineffective assistance of trial counsel, identified as Claims 25 - 27.  See June 28, 2018 Order (Doc. No. 127).  Respondent filed two motions for summary judgment, one addressing Claims 1 - 14 (Doc. No. 139) and one addressing Claims 15 - 27 (Doc. No. 133).  Towle filed objections (Doc. Nos. 158, 161) to the motions for summary judgment.[4]

## Discussion

### I.   Claims Not Decided in the State Courts

#### A.   De Novo Standard

A federal court may review a petition for a writ of habeas corpus "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  When a petitioner raises a federal constitutional claim in the state court, and the state court does not address that claim, the federal habeas court will consider the claim de novo.  See Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007).

---

[4]The court has, this date, issued an Order (Doc. No. 171) dismissing Claims 25 and 27 as untimely filed.  Accordingly, to the extent the Respondent seeks summary judgment as to those two claims, the motion is denied as moot.

B.  <u>Claims 1 and 2</u>

In his Petition, Towle asserted the following claims,

identified by the Court as Claims 1 and 2:

> 1.   The trial court erred in allowing the prosecutor to
> refresh J.T.'s recollection when J.T. had not testified to
> any lack of recollection, concerning whether Towle engaged
> in fellatio with J.T. on one occasion.
>
> 2.   The trial court erred in allowing the state to elicit
> testimony that photographic evidence corroborated the
> allegations against Towle, while the photograph itself was
> excluded from the trial.

Aug. 28, 2015 Order (Doc. No. 5, at 2).

Towle raised these claims in a post-conviction motion,

entitled "Motion to Vacate II" ("MTV II") (Doc. No. 9-1) filed

in his criminal case in the CCSC.[5]  The CCSC denied that motion

and dismissed Claims 1 and 2 because it believed "they

present[ed] the very same issues that the defendant raised and

the New Hampshire Supreme Court decided on his direct appeal . .

. [and] the Supreme Court's rulings are final."  <u>See</u> Sept. 30,

2015 Order, <u>Towle Crim.</u> (Doc. No. 9-2, at 2).  Towle, however,

did not argue in his brief on direct appeal that the two

evidentiary rulings described in Claims 1 and 2 violated his

federal constitutional rights; thus, he raised those issues as

claims that the trial court had misapplied state rules of

---

[5]While Towle's direct appeal of his conviction was pending,
Towle filed and litigated a motion entitled "Motion to Vacate I"
("MTV I") in the CCSC.  The MTV I proceedings are not pertinent
to this Court's consideration of the instant motions for summary
judgment.

evidence.  See Apr. 4, 2014 Def.'s Rule 7 Appeal Br. ("Def.'s

Br."), State v. Towle, No. 2013-0217 (N.H.) ("Direct Appeal")

(Doc. No. 139-2).  In its opinion affirming Towle's convictions,

the NHSC did not address the claims raised on appeal in federal

constitutional terms.  See Towle, 111 A.3d 679 (N.H. 2015).

Accordingly, the court considers the federal nature of Claims 1

and 2 de novo.  See Pike, 492 F.3d at 67.


    1.   Claim 1

    In Claim 1, Towle claims the trial court violated his Sixth

and Fourteenth Amendment rights when it allowed the prosecutor

to refresh J.T.'s recollection, when J.T. had not testified to

any lack of recollection, concerning whether Towle engaged in

fellatio with J.T. on one occasion.  See Pet. (Doc. No. 1, at 7-

8).  The NHSC summarized the facts related to this claim as

follows:

> The defendant first argues that the trial court erred
> by permitting the State to use prior statements to
> refresh the victim's recollection of the final sexual
> assault that occurred in early 2006, after the victim
> had been removed from the defendant's custody.  The
> defendant asserts that the victim testified
> unequivocally that the defendant had not sexually
> assaulted him on that occasion and was neither
> confused nor uncertain.  Therefore, he argues, the
> State had no justification for refreshing his
> recollection.
>
> The record reflects the following exchange on direct
> examination:

[State]:  And did anything happen at that time when your father [was] there?

[Victim]:  Well, I had showed up.  And he was in the computer room with the baby.  I went back there.  And we were chit-chatting.  He was doing whatever on the computer and drinking a beer.  And then he had asked me to take my pants off.  And I was like, really?  You know, we're already in this situation and you're right here asking me to take my pants off.  And I just had a serious problem with that.

[State]:  And then what ended up happening?

[Victim]:  To the best of my knowledge, I just decided against it.  I was really uncomfortable with the whole situation.  I didn't want it to happen, period.  You know?  It was I'm here to see my brother, not to engage with you.  You know? It's unnecessary.

.  .  .

[State]:  [D]id you argue with him or what?

[Victim]:  No, I don't believe there was any real arguing.  Just, you know, I felt my time being there was over and I believe I left.

.  .  .

[State]:  And so did anything happen between you and your father at that location?

[Victim]:  No, because I believe I made sure it didn't.

The defendant, who represented himself at trial, revisited the incident during his cross-examination of the victim:

[Defendant]:  [The State] asked you—he was trying to ask you, you know, if you were assaulted by me at the Reed's [sic] house on High Street.

[Victim]:  Right.

> [Defendant]:  And just in your testimony, you
> conveyed to him that nothing happened?
>
> [Victim]:  To the best of my memory, nothing
> happened. I put it—you know, I said no.
>
> [Defendant]:  Just a second ago, did you not just
> say to me that it wasn't in front of [infant
> son], it was—
>
> [Victim]:  Well, the situation that you were
> trying to do wasn't happening in front of [infant
> son].
>
> [Defendant]:  My question to you was not whether
> there was a situation. My question was—
>
> [Victim]:  Well, if you're referring to nothing
> happening, you know, you trying to get me to take
> my pants off, and if that's not it, then please
> fix me—point me to where I'm supposed to go with
> that.  Correct me.  That's what I'm trying to
> say.

On redirect, the State attempted to use the victim's
prior statements to refresh his recollection of the
incident.  The defendant objected on the basis that
the State had not laid a foundation for refreshing the
victim's recollection.  The trial court sustained the
objection and ordered the State to first establish
that the victim's recollection needed refreshing. The
following exchange occurred:

> [State]:  Now, in terms of your testimony
> yesterday during direct and cross-examination,
> you talked about visiting your brother . . .
>
> [Victim]: Uh-huh.
>
> . . .
>
> [State]:  And you recall the Defendant
> propositioning you at that time to do what had
> happened many times before that you testified?
>
> [Victim]: Yes, sir.

> [State]: And at that point you testified that you
> didn't recall him actually performing oral sex on
> you at that time; is that correct?
>
> [Victim]: I did.

Next, the State asked the victim to review a portion
of his interview with a staff member at the Child
Advocacy Center and whether the interview refreshed
his recollection about the incident that had occurred
in early 2006. The victim stated that the interview
did refresh his recollection, and the defendant
objected.

During the ensuing sidebar conference, the defendant
argued that the State was attempting to refresh the
victim's recollection when the victim, on direct
examination, had never stated that he could not
remember what had occurred and stated clearly that
nothing had happened. The State argued that the
victim had just declared that he did not recall what
had occurred, and only at that point did the State ask
the victim to review the interview transcript. The
trial court overruled the objection and allowed the
State's examination to continue. The State continued
its redirect examination and the victim stated that he
remembered the defendant asking him to take his pants
off and the defendant actually performing oral sex on
him.

The defendant reiterated his objection during the next
day of trial and in a motion to dismiss after the
conclusion of the State's case. The State argued that
the victim had stated on redirect examination that he
did not remember if anything had occurred during that
visit with the defendant in early 2006 and that its
efforts to refresh the victim's recollection were
proper. After noting that it had "observed and heard
the entire course of trial and . . . the circumstances
presented," the trial court ruled that refreshing the
victim's memory was proper.

Towle, 111 A.3d at 682–83.

The rules of admissibility of evidence are governed by

state law, which is beyond the province of this Court with

respect to habeas relief, unless there is a federal

constitutional claim raised.  See Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006).  "An erroneous evidentiary ruling that results in a fundamentally unfair trial may constitute a due process violation and thus provide a basis for habeas relief." Lyons v. Brady, 666 F.3d 51, 55 (1st Cir. 2012).  "[T]o give rise to habeas relief, the state court's application of state law must be so arbitrary or capricious as to constitute an independent due process violation" and "must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible."  Id. at 55-56 (internal quotation marks, ellipsis, and citations omitted).  "The Supreme Court has 'defined the category of infractions that violate fundamental fairness very narrowly.'"  Kater, 459 F.3d at 61 (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (brackets omitted) (quoting Montana v. Egelhoff, 518 U.S. 37, 43 (1996)).

In his Petition, Towle does not identify any reason why the trial court's ruling was "arbitrary or capricious" or how admission of J.T.'s testimony "so infuse[d] the trial with inflammatory prejudice" that it rendered Towle's trial fundamentally unfair; he only argues that the trial court's

ruling was erroneous under state law.  See Pet. (Doc. No. 1, at 7-8).  Additionally, in his objection to the Warden's motion for summary judgment, Towle again argues whether the trial court's ruling was correct under the New Hampshire Rules of Evidence.  See May 14, 2019 Pet'r's Obj. to Resp't's Mot. for Summ. J. (Doc. No. 158, at 1-11).  Towle makes only passing reference to due process, stating, without explanation, that the trial court's ruling was not supported by the record "and prejudiced Towle to the extent that it rendered the trial fundamentally unfair."  Id. at 9.

The NHSC, however, concluded that the trial court's ruling was supported by the record, specifically rejecting Towle's assertion that "[n]othing in [the victim's] trial testimony . . . afforded a basis to allow the prosecutor to employ the refreshing-recollection device."  Towle, 111 A.3d at 684.

> In his testimony, the victim described a myriad of abuses inflicted on him by the defendant.  He testified with clear and unambiguous language to such things as statements the defendant made to him, acts the defendant made him perform or performed on him, and where and when such acts occurred.  When he began to detail the incident that occurred in early 2006, however, the tone of his language became uncertain and ambiguous.  In his description of that incident, he began using phrases such as "I believe," "to the best of my knowledge," or "to the best of my memory" before detailing what he believed had occurred.  This phraseology suggests uncertainty or a failure of memory, and the shift from clear and unambiguous language to uncertain language, along with the trial court's ability to observe the victim's demeanor, supports the trial court's reasonable conclusion that the victim's memory was exhausted.  Furthermore, the victim, on redirect examination, testified that he

> "didn't recall [the defendant] actually performing
> oral sex on [him]" in early 2006.  Accordingly, we
> conclude that the trial court properly exercised its
> discretion by permitting the State to use the victim's
> prior statements to refresh his recollection.

Id. at 684-85.

Towle does not allege that he was unable to confront or
cross-examine J.T. about his memory of the event and it was
within the province of the jury to evaluate J.T.'s credibility.
See Roman v. Mitchell, 924 F.3d 3, 8 (1st Cir. 2019).
Accordingly, the Court concludes that regardless of whether the
trial court's ruling was unquestionably correct, allowing the
prosecutor to refresh J.T.'s recollection was "well within the
universe of plausible evidentiary rulings" and, "therefore, not
so arbitrary or capricious as to work a denial of [Towle's]
constitutionally secured fair-trial right."  Coningford v. Rhode
Island, 640 F.3d 478, 485 (1st Cir 2011).  Accordingly, the
Respondent's motion for summary judgment (Doc. No. 139) is
granted as to Claim 1.


   2.   Claim 2

In Claim 2, Towle asserts that the trial court erred in
allowing the state to elicit testimony that photographic
evidence corroborated the allegations against Towle, while the
photographs themselves were excluded from the trial.  See Pet.
(Doc. No. 1, at 10).  The NHSC summarized the facts related to
this claim as follows:

Before the trial began, the defendant filed a pre-trial motion to exclude five photographs that depicted the defendant and the victim nude and in various states of arousal. The trial court granted the motion to the extent that the photographs and any "explicit inflammatory testimony" describing the photographs would not be admissible at trial unless the defendant "opened the door." Nevertheless, the trial court allowed the State to elicit testimony regarding the photographs and their "inappropriate" nature to explain why E.J., the witness who brought the sexual abuse to the attention of the police and the New Hampshire Division for Children, Youth, and Families (DCYF), came forward with her allegations. Then, prior to E.J.'s testimony, the trial court ruled that the photographs could be described as evidence that E.J. believed would implicate the defendant in criminal activity. In reaching this conclusion, the trial court found that the photographs had significant probative value, particularly with respect to explaining why E.J. went to the police and DCYF and why those agencies took action against the defendant, but the photographs could unfairly prejudice the defendant. Therefore, the trial court excluded the photographs and any graphic descriptions thereof but permitted testimony that E.J. had evidence that she believed substantiated her allegations in order to provide context to her actions and testimony.

During the trial, other witnesses briefly discussed the photographs in various contexts. The victim, during the State's direct examination, testified that he finally "opened up" about the sexual abuse after his guardian ad litem (GAL) confronted him with the fact that she had "[seen] the pictures." This was the only time during trial that this evidence was referred to as being photographic in nature.[FN 1] Attorney Jennifer Dougherty and Karen York, who were both affiliated with DCYF, Detective Karl Nelson of the Berlin Police Department, and Attorney Wendy Roberts, the victim's GAL, were all asked on cross-examination by the State about physical evidence, specifically referring to the photographs, brought by E.J. to substantiate the allegations she made to DCYF and the Berlin police. The trial court overruled the defendant's objections to these lines of questioning because it found that the defendant, during his direct examination of each witness, had challenged E.J.'s credibility regarding the claims she had made to DCYF

and the Berlin police, as well as the bases for both entities to take action against him. The trial court concluded that the defendant had "opened the door" for the State to correct any false or misleading impressions the witnesses' responses may have created and, further, that the probative value of the testimony the State sought to elicit was not substantially outweighed by the danger of unfair prejudice to the defendant.

> [FN 1:] We note that this testimony occurred prior to the trial court's decision to prevent E.J. from referring to the photographs as anything but "evidence." After the trial court imposed this limitation, the photographs were referred to as either evidence or evidence that E.J. believed was substantial or credible.

Towle, 111 A.3d at 685 & n.1.

Towle does not identify any reason why the trial court's evidentiary rulings were "arbitrary or capricious" or how the witnesses' testimony about the photographs "so infuse[d] the trial with inflammatory prejudice" that it rendered his trial fundamentally unfair. Lyons, 666 F.3d at 55, 56; see Pet. (Doc. No. 1, at 10). Instead, Towle contends the trial court's evidentiary rulings were erroneous because "there is no such 'evidence' in existence as the court came to know at an evidentiary hearing outside the presence of the jury." Pet. (Doc. No. 1, at 10). Towle's assertion that the photographs about which the witnesses testified did not exist simply is not consistent with the record, given that defense counsel moved to have the photographs excluded, and Towle's brief on appeal describes what was depicted in the photographs. See Def.'s Br., Direct Appeal (Doc. No. 139-2, at 19).

15

On direct appeal, Towle challenged the trial court's application of New Hampshire Rule of Evidence 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." N.H. R. Evid. 403. Towle argued that the cumulative effect of the references to the photographs created the same impression that would have been created had more explicit testimony describing the photographs been admitted. See Towle, 111 A.3d at 686. The NHSC held that the trial court did not abuse its discretion in allowing the testimony. See id. at 687.

The trial court allowed testimony about the photographs because it provided necessary context to the testimony of the witnesses – specifically, it explained why the witnesses took certain actions in the case, such as filing a complaint with the police, opening an investigation, confronting another witness, and acknowledging acts of sexual abuse. Only once was the evidence identified as "pictures," and that was a passing reference made by J.T. when he was explaining why he finally admitted Towle's abuse to his guardian ad litem ("GAL"). Otherwise, the witnesses were permitted to testify that they were in possession of, or had seen, "evidence" corroborating the reporting witness's allegations to police and the Division for

Children, Youth, and Families ("DCYF") that Towle had abused J.T.

Towle himself opened the door to the testimony of the DCYF witnesses, the Berlin Police Department witness, and J.T.'s GAL concerning the photographs, by attacking the conclusions they reached about whether Towle might have sexually assaulted or otherwise sexually abused J.T., and by attacking whether there were grounds for the actions that the witnesses took based on those conclusions. The trial court allowed the State to elicit limited testimony about the photographs on cross-examination of the witnesses, finding that "the witnesses' testimony could, without clarification, lead the jury to conclude that the Berlin police and DCYF had no justification for taking action against the defendant." Id.

The trial court's evidentiary rulings were not "arbitrary" or "capricious"; throughout the trial, the court ruled that the limited testimony it allowed about the photographs was necessary to provide context to the witnesses' actions. In addition, Towle has failed to show that any unfair prejudice outweighed the testimony's probative value. The mere fact that evidence hurts a defendant's case does not make its admission erroneous. See United States v. Rodríguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989). Such evidence is problematic under the Constitution only when the evidence "so infuse[s] the trial with inflammatory

prejudice" that it renders a defendant's trial fundamentally unfair. <u>Lyons</u>, 666 F.3d at 56.

In Towle's case the trial court took affirmative steps to minimize the risk of unfair prejudice by excluding from trial the most prejudicial aspect of the evidence, the photographs themselves and any graphic or inflammatory descriptions of the photographs. Furthermore, the trial court offered to issue a limiting instruction to the jury to cure any potential unfair prejudice that Towle believed to exist, but Towle "declined the offer." <u>Towle</u>, 111 A.3d at 688.[6]

In short, Towle has failed to demonstrate that the trial court violated his right to a fundamentally fair trial under the Sixth and Fourteenth Amendments when it allowed testimony about the photographs. Accordingly, Respondent's motion for summary judgment (Doc. No. 139) is granted as to Claim 2.[7]

---

[6]Cf. <u>United States v. Blanchard</u>, 867 F.3d 1, 12 (1st Cir. 2011) (defendant declining curative instruction "an have no complaint" when denied the more drastic remedy of a mistrial).

[7]In his objection to the Warden's summary judgment motion, Towle contends that the witnesses' testimony should have been excluded for an additional reason. He asserts that evidence was "fruit of the poisonous tree" because the photographs had been suppressed on Fourth Amendment grounds in Towle's related child pornography case. <u>See</u> May 14, 2019 Pet'r's Obj. to Resp't's Mot. for Summ. J. (Doc. No. 158, at 11-14). Towle cannot use an objection to a summary judgment motion to add a new claim to a § 2254 petition. <u>See</u> 28 U.S.C. § 2254(b)(1); § 2254 Rule 2(c) ("The petition must: (1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground[.]").

C.    Claims 13 and 14

In his Petition, Towle asserted the following claims, identified by the Court as Claims 13 and 14:

13.    The NHSC erred in using evidence that had been suppressed at trial in affirming Towle's convictions.

14.    The NHSC erred in using inflammatory descriptions of photographs that had been suppressed at trial in affirming Towle's convictions.

Aug. 28, 2015 Order (Doc. No. 5, at 4).

In Claims 13 and 14, Towle claims the NHSC violated his Sixth and Fourteenth Amendment rights when it used "suppressed 'evidence'" and "barred language[,] . . . [specifically,] explicit and inflammatory descriptions[,] of suppressed 'evidence'" in its ruling affirming Towle's convictions. See Pet. (Doc. No. 1, at 35, 38). The "suppressed evidence" to which Towle refers is the excluded photographs that are the subject of Claim 2. The record indicates that Jodoin used her own camera to take the photos at issue in Claims 13 and 14, and that she later gave those photographs to the police.

According to Towle, the trial court in his related child pornography case suppressed those photographs on Fourth Amendment grounds. Thus, Towle claims, the NHSC denied him due process and a fair tribunal when it "introduced" and provided an "explicit" and "inflammatory" description of the photographs in its decision affirming his convictions in the cases that are the subject of this § 2254 action. See Pet. (Doc. No. 1, at 35-36,

38-39); May 14, 2019 Pet'r's Obj. to Resp't's Mot. for Summ. J. (Doc. No. 158, at 11-13).

Towle raised these claims in a post-conviction motion in his criminal case, MTV II.  See Doc. No. 9-1, at 4.  The CCSC denied that motion and dismissed the claims for lack of jurisdiction, because, as the inferior court, it had no authority to address claims asserting that the NHSC erred.  See Sept. 30, 2015 Order, Towle Crim. (Doc. No. 9-2, at 6).  The NHSC declined Towle's Notice of Discretionary Appeal ("NODA").  See Order, State v. Towle, No. 2015-0612 (N.H. Dec. 7, 2015) (Doc. No. 9-4).  As such, there has been no merits review of Claims 13 and 14.

To the extent Claims 13 and 14 are not procedurally defaulted for purposes of federal habeas review, Towle's Claims fail for several reasons.  First, while it is true that certain photographs seized from Towle's computer were suppressed on Fourth Amendment grounds in Towle's related child pornography case, Towle has not produced any evidence that the five photographs at issue in Claims 13 and 14, which Jodoin took using her own camera, and which she gave to the police, were also suppressed on Fourth Amendment grounds in Towle's child pornography case.

Furthermore, in the trial underlying the case at issue here, the trial court did not exclude the Jodoin photographs on Fourth Amendment grounds.  It excluded those photographs, and

any graphic description of their contents, under New Hampshire Rule of Evidence 403 because their probative value was substantially outweighed by the danger of unfair prejudice.  See Towle, 111 A.3d at 686.

In Claims 13 and 14, Towle essentially asserts that the NHSC violated his due process rights when it discussed, in its opinion affirming his conviction, evidence that had been excluded at trial pursuant to a state evidentiary rule.  Due process requires that a criminal appellant be afforded "an adequate opportunity to present his claims fairly in the context of the State's appellate process."  Ross v. Moffitt, 417 U.S. 600, 616 (1974).  Stated in other terms, due process requires that an appeal not be decided arbitrarily without regard to the merits.  See Evitts, 469 U.S. at 405.

Petitioner has failed to allege, or demonstrate, how the NHSC's actions deprived him of an "adequate opportunity" to "present . . . fairly" his appellate claim challenging the trial court's application of New Hampshire Rule of Evidence 403.  See Ross, 417 U.S. at 616.  Consequently, the Respondent's motion for summary judgment (Doc. No. 139) is granted as to those claims.


D.   Claim 19

In his Petition Towle asserted the following claim, which the Court has identified as Claim 19:

19. Towle's Sixth and Fourteenth Amendment rights were
violated when he was denied the effective assistance of
trial counsel, when counsel failed to properly raise and
preserve Towle's claim that his right not to be subject to
double jeopardy was violated by his convictions and
consecutive sentences on two pattern aggravated felonious
sexual assault charges, each alleging that Towle committed
more than one act of aggravated felonious sexual assault on
the same victim, J.T., during the same time period.

Jan. 16, 2018 R&R (Doc. No. 100, at 4) (approved by Feb. 15,

2018 Order (Doc. No. 117)). In Claim 19, Towle asserts that

Attorney Fricano failed to properly raise and preserve Towle's

double jeopardy claim challenging the multiple pattern AFSA

counts, discussed below in Claim 15. Respondent argues that to

the extent Attorney Fricano was in fact representing Towle at

the pertinent time, and not serving only as standby counsel,

Towle's claim should be denied as the state courts properly

denied this ineffective assistance of counsel claim on the

merits.

Towle raised Claim 19 in his April 17, 2017 post-conviction

motion entitled "Motion to Vacate IV" ("MTV IV") filed in his

criminal case. See Doc. No. 91-1, at 3. The CCSC denied that

motion, citing and incorporating by reference the reasons stated

in the State's "Objection to Motion to Vacate IV and V

(Supplemental)." See May 2, 2017 Order, Towle Crim. (Doc. No.

91-9, at 1). After the CCSC denied Towle's motion, he asserted

Claim 19 in a NODA. See id., May 8, 2017 NODA (Doc. No. 91-4,

22

at 4).  The NHSC declined to accept the appeal.  See State v. Towle, No. 2017-0248 (N.H. June 22, 2017) (Doc. No. 91-5).

Respondent argues that the appropriate standard of review is deferential, as the CCSC's order incorporated, by reference, the state's merit-based arguments, in denying the MTV IV. Because it is not entirely clear to the court that the merits of the claim asserted in Claim 19 were decided in the CCSC's order denying MTV IV, this Court will decide the claim de novo.

As stated above, Strickland requires a petitioner claiming ineffective assistance of counsel to show both that counsel's representation fell below an objective standard of reasonableness, and that prejudice resulted.  See 466 U.S. at 687.  For reasons stated below as to Claim 15, Towle suffered no double jeopardy violation when he was charged, tried, convicted, and sentenced consecutively on the two pattern AFSA indictments with which he was charged.  Counsel's failure to preserve that claim, therefore, cannot be deemed prejudicial.  Accordingly, this court grants Respondent's motion for summary judgment (Doc. No. 133) as to Claim 19.


II.  Claims Decided on the Merits in the State Courts

    A.   Deferential Standard

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a); <u>see also</u> <u>Cullen, 563 U.S. at 181</u>.  When a

prisoner brings a claim in federal court that was adjudicated on

the merits in state court proceedings,

> [f]ederal habeas relief may not be granted for claims
> subject to § 2254(d) unless it is shown that the
> earlier state court's decision was contrary to
> federal law then clearly established in the holdings
> of th[e Supreme] Court, or that it involved an
> unreasonable application of such law, or that it was
> based on an unreasonable determination of the facts
> in light of the record before the state court.

<u>Harrington v. Richter, 562 U.S. 86, 100 (2011)</u> (internal

quotation marks and citations omitted).

> A state court's ruling is contrary to federal law
> either when it adopts a rule that contradicts the
> governing law set forth in the Supreme Court's cases
> or when it reaches a different result from a Supreme
> Court decision under a set of facts that are
> materially indistinguishable. . . . To be unreasonable
> . . . the application of federal law must be more than
> incorrect or erroneous.  In other words, some
> increment of incorrectness beyond error is required.
> Finally, we only overturn state court factual
> determinations that are unreasonable in light of the
> record.

<u>Rosenthal v. O'Brien, 713 F.3d 676, 683</u> (1st Cir. 2013)

(internal quotation marks and citations omitted).  The

petitioner bears the burden both of showing that the state court

decision is contrary to, or involves an unreasonable application

of, established federal law, and of rebutting the presumption of

correctness of state court factual findings by clear and

convincing evidence.  <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Rice v.

Collins</u>, 546 U.S. 333, 339 (2006).

A federal habeas court examining a state court decision on the merits presumes that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The federal court thus "begin[s] by asking which is the last explained state-court judgment," id. at 805 (emphasis in original), and "look[s] through subsequent unexplained denials" to the last reasoned opinion of the state courts, id. at 806. The federal court "should then presume that the unexplained decision adopted the same reasoning" as the last reasoned opinion, and should proceed to consider that rationale in undertaking its review of the federal claim, unless that presumption has been rebutted by evidence that the unexplained decision relied on different grounds than the lower's court's decision. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

"Section 2254(d) applies even where there has been a summary denial" of the federal claim in the state courts. Cullen, 563 U.S. at 187; see Harrington, 562 U.S. at 100 (one-sentence summary denial constituted adjudication on the merits and § 2254(d) applied). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits. . . ." Johnson v. Williams, 568 U.S. 289, 301 (2013). The presumption that a federal claim was adjudicated on the

25

merits is rebuttable under limited circumstances not present here.  See id.

Where the state courts have summarily denied petitioner's federal claims, the petitioner can satisfy the "unreasonable application" prong of § 2254(d)(1) only "by showing that 'there was no reasonable basis' for the [state court]'s decision." Cullen, 563 U.S. at 188 (quoting Harrington, 562 U.S. at 98). The writ may issue only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington, 562 U.S. at 102.


B.  Claim 15

In his Petition, Towle asserted the following claim, identified by the Court as Claim 15:

15. Towle's Fifth and Fourteenth Amendment right not to be subjected to double jeopardy was violated when:

(a) Towle was convicted of two separate counts of pattern aggravated felonious sexual assault, each alleging that Towle committed more than one act of aggravated felonious sexual assault on the same victim, J.T., during the same time period, where all of the sexual assaults charged in the two indictments were part of the same pattern, and was thus twice convicted of the same offense; and

(b) Towle was sentenced to consecutive sentences on each of the two indictments, and was thus twice punished for the same offense.

Jan. 16, 2018 R&R (Doc. No. 100, at 3) (approved by Feb. 15, 2018 Order (Doc. No. 117)).

Two of the indictments upon which Towle was convicted alleged that Towle committed a "pattern" AFSA offense in violation of N.H. Rev. Stat. Ann. § ("RSA") 632-A:2, III.[8]  The indictments at issue differ from one another in that one charged that Towle made J.T. perform fellatio on him more than once over the course of a year, and the other charged that Towle performed fellatio on J.T. more than once during the same time frame.  In Claim 15(a) Towle argues that his convictions on two counts of pattern AFSA violated his rights under the Double Jeopardy Clause because, he argues, the indictments were duplicative and arguably charged Towle twice with criminal offenses for the same acts.  Similarly, in Claim 15(b), Towle alleges a second violation of the Double Jeopardy Clause on the basis that the separate and consecutive prison sentences the trial court imposed on the two pattern AFSA charges amount to two punishments for the same offense.

---

[8]RSA 632-A:2, III states that:

A person is guilty of aggravated felonious sexual assault when such person engages in a pattern of sexual assault against another person, not the actor's legal spouse, who is less than 16 years of age.  The mental state applicable to the underlying acts of sexual assault need not be shown with respect to the element of engaging in a pattern of sexual assault.

Towle raised Claims 15(a) and (b) in the state court in a post-conviction motion filed in the CCSC entitled "Motion to Vacate III" ("MTV III").  On April 28, 2106, the CCSC initially denied the MTV III without stating the reasons for the denial, see Apr. 28, 2016 Order, Towle Crim. (Doc. No. 161-1, at 4), and then, in an order denying Towle's motion to reconsider the April 28, 2016 Order, the CCSC clarified its reasons for denying Towle relief by incorporating, by reference, the arguments set forth in the State's Objection to the MTV III.  See May 19, 2016 Order, Towle Crim. (Doc. No. 161-1, at 8); see also id., Apr. 28, 2016 State's Obj. to MTV III (Doc. No. 161-1, at 1-3). Towle raised the federal double jeopardy claims the CCSC denied in a NODA.  See id., June 9, 2016 NODA.  The NHSC declined the appeal.  See State v. Towle, No. 2016-0312 (N.H. Aug. 19, 2016) (Doc. No. 65, at 15).

Respondent argues that this court's review of the state courts' disposition of Claim 15 is deferential, under 28 U.S.C. § 2254(d)(1).  Towle does not argue that a different standard applies with respect to Claim 15, and thus this court applies that deferential standard in reviewing the state court's disposition of Claim 15.[9]

---

[9]The court notes that even if this Court were to apply a de novo standard of review in evaluating Claim 15, the result would be the same as that reached here as to that claim.

The Double Jeopardy Clause, applied to the States through the Fourteenth Amendment, provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V. The pertinent Supreme Court case regarding whether multiple indictments violate the Double Jeopardy Clause by criminalizing a single continuous offense is <u>Blockburger v. United States</u>, 284 U.S. 299 (1932). The Court, in <u>Blockburger</u>, considered whether two drug sales could be prosecuted as two separate violations of the Narcotics Act or whether such a prosecution would violate the defendant's double jeopardy rights, as the events were part of a continuous offense. The Court determined that the federal statute was intended to penalize separate sales as separate offenses, however closely they may follow each other, and found no double jeopardy violation as the two indictments charged distinct and separate sales made at separate times. <u>See</u> <u>id.</u> at 302.

> The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in <u>Blockburger</u>[], 284 U.S.[at] 304[]:

>> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . ."

> This test emphasizes the elements of the two crimes.
> "If each requires proof of a fact that the other does
> not, the _Blockburger_ test is satisfied notwithstanding
> a substantial overlap in the proof offered to
> establish the crimes . . . ."

_Brown v. Ohio_, 432 U.S. 161, 166 (1977) (citation omitted). New

Hampshire law similarly allows for the separate prosecutions of

distinct offenses (here, separate "pattern" AFSAs) even if the

events involve the same individuals interacting during the same

time period. See _State v. Richard_, 786 A.2d 876, 880 (N.H.

2001) (finding no error in trial court's imposition of multiple

punishments for multiple counts where multiple "pattern

indictments charged overlapping time frames, [and] each charged

a particular variant of sexual assault different from the type

charged in the other patterns").

There is no inconsistency between how the Supreme Court

resolved the double jeopardy claim in _Blockburger_, and the

decision at issue as to Claim 15. Here, as in _Blockburger_, the

challenged indictments did not rely on the same acts to comprise

each charged pattern; one indictment charged multiple instances

of Towle making the victim perform fellatio on Towle and the

other charged multiple instances of Towle performing fellatio on

the victim. However close in time those acts may have been, and

although they involved the same individuals, the acts were

fundamentally different. The state court's decision, finding no

merit in Towle's double jeopardy claim, is consistent with the

Supreme Court's holding in _Blockburger_; is not an unreasonable

application of that authority; and is based on reasonable determinations of facts regarding the scope of the indictments and the evidence required to prove each charged pattern offense. Accordingly, Respondent's motion for summary judgment (Doc. No. 133) is granted as to Claim 15.

    C.    Claim 16(b)

    In his Petition, Towle asserted the following claim, which this Court has identified as Claim 16(b):

    16. Towle's Sixth and Fourteenth Amendment rights were violated when the trial court . . . (b) on the second day of trial, denied Towle a transcript of [] individual juror voir dire.

Jan. 16, 2018 R&R (Doc. No. 100, at 3) (approved by Feb. 15, 2018 Order (Doc. No. 117)).  Towle raised this claim in a petition for a writ of habeas corpus filed in the New Hampshire Superior Court, sitting at Merrimack County ("MCSC").  See Oct. 8, 2015 Pet. for Writ of Habeas Corpus, Towle v. Warden, N.H. State Prison, No. 217-2015-CV-580 (N.H. Super. Ct., Merrimack Cty.) ("State Habeas") (Doc. No. 70-1).

    The MCSC denied Towle relief, stating:

    Petitioner . . . argues his constitutional rights were further violated when he was denied access to a transcript of the voir dire conducted in his case. "[T]he right to a transcript is not absolute." State v. Thomas, [840 A.2d 803, 806 (N.H.] 2003) (citation omitted).  Rather, the Court looks at whether a defendant needs a transcript to conduct an effective defense. See id.

> [T]he United States Supreme Court [has]
> identified two factors that are relevant to
> the determination of need: (1) the value of
> the transcript to the defendant in
> connection with the appeal or trial for
> which it is sought, and (2) the availability
> of alternative devices that would fulfill
> the same functions as a transcript.

Id. [citing Britt v. North Carolina, 404 U.S. 226, 227
(1971)]. "[I]n any case in which an audiotape exists
of the proceeding for which a transcript is sought,
the burden [is] on the defendant requesting the
transcript to review the audiotape to determine the
value to the defendant and to limit the scope of his
request." Id. (quotation omitted). Here, there is no
evidence Petitioner complied with the requirement to
first review the audiotape of the jury selection
before requesting a transcript. Moreover, during jury
selection, Petitioner chose to be represented by
counsel, who discussed the voir dire bench conferences
with Petitioner both during jury selection and
afterwards. The value of a transcript to him was
minimal. As a result, Petitioner has failed to meet
his burden of proving that he is entitled to the
relief requested in his writ as it relates to his
request for a transcript.

Apr. 14, 2106 Order, State Habeas (Doc. No. 160-1, at 21).

The state court decision cited by the MCSC, Thomas,

840 A.2d 803 (N.H. 2003), referenced the standard for

determining whether a defendant is entitled to a transcript

set forth in Supreme Court's decision in Britt, 404 U.S. at

227. See Thomas, 840 A.2d at 806. Britt is the pertinent

Supreme Court authority under which the state court's

decision as to Towle's Claim 16(b) should be evaluated.

The court finds that the MCSC properly applied the

Britt standard to the facts before it in determining that

Towle's due process rights were not violated by the trial court's denial of a transcript of jury selection on the second day of trial.  Further, nothing in the record before this court suggests that the MCSC unreasonably determined the facts before it when it denied Towle's due process claim.  Accordingly, the court finds that under § 2254(d), Towle is not entitled to habeas relief as to Claim 16(b), and the respondent's motion for summary judgment (Doc. No. 133) is granted as to that claim.

     D.    <u>Claims Asserting Ineffective Assistance of Counsel</u>

        1.    <u>Ineffective Assistance of Counsel Standard</u>

The Sixth Amendment, which is made applicable to the states by the Fourteenth Amendment,[10] guarantees a criminal defendant "the right to the effective assistance of counsel." United States v. Miller, 911 F.3d 638, 641 (1st Cir. 2018) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).  To assert an ineffective assistance of counsel claim, "[f]irst, the defendant must show that counsel's performance was deficient," and "[s]econd, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

---

[10] <u>See</u> Walker v. Medeiros, 911 F.3d 629, 631 n.1 (1st Cir. 2018).

To satisfy the first part of the inquiry, the so-called performance prong, Towle must show that counsel's representation was "outside the wide range of professionally competent assistance." Id. at 690. To satisfy the prejudice prong, Towle must show "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Rivera v. Thompson, 879 F.3d 7, 12 (1st Cir. 2018) (quoting Strickland, 466 U.S. at 688).

When reviewing an ineffective assistance claim asserted in a § 2254 petition, the court must apply a "doubly deferential" standard of review, which requires the petitioner "to show that counsel's performance was objectively unreasonable and that no reasonable jurist could come to the . . . conclusion the state court drew [that counsel's performance was reasonable]." Lucien v. Spencer, 871 F.3d 117, 131 (1st Cir. 2017) (emphasis in the original) (citing Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)); see also Rivera, 879 F.3d at 12. This "'doubly deferential standard of review [which] gives both the state court and the defense attorney the benefit of the doubt . . . is an extremely difficult standard to meet.'" Jaynes v. Mitchell, 824 F.3d 187, 196 (1st Cir. 2016) (citation omitted). Where, as here, "a federal habeas petitioner [is] trying to excuse his procedural default by showing ineffective assistance of counsel as cause[, he] must first have presented the ineffective assistance claim to the state court." Lynch v. Ficco, 438 F.3d

35, 46 (1st Cir. 2006) (citing <u>Edwards v. Carpenter</u>, 529 U.S.
46, 452-53 (2000)).

Additionally, an ineffective assistance of counsel claim
asserted as cause for a procedural default "can itself be
procedurally defaulted." <u>Edwards</u>, 529 U.S. at 453. In order to
assert a procedurally defaulted ineffective assistance of
counsel claim, to demonstrate cause for a procedural default of
another claim, a petitioner must satisfy the cause and prejudice
standard with respect to the ineffective assistance of counsel
claim. <u>See</u> <u>Costa v. Hall</u>, 673 F.3d 16, 23, 25 (1st Cir. 2012);
<u>Edwards</u>, 529 U.S. at 452.


    2.  <u>Claim 12</u>

In his Petition, Towle asserted the following claim which
this court has identified as Claim 12:

> 12. Towle was denied the effective assistance of
> appellate counsel when his appellate attorney: (a)
> refused to brief certain issues concerning the denial
> of a fair trial, and (b) refused to pursue stronger
> issues on appeal.

Aug. 28, 2015 Order (Doc. No. 5, at 4). In this claim, Towle
asserts that his appellate counsel refused to brief eight of the
ten issues listed in Towle's April 3, 2013 Notice of Mandatory
Appeal ("NOMA") (Doc. No. 8-1), despite Towle advising counsel
that he did not want to waive any of his claims, and that he
wanted all of the claims in the NOMA to be briefed on appeal.

Towle's NOMA listed the following issues for appellate review:

1. Whether the trial court erred when it refused to sever the charges.

2. Whether the trial court erred when it failed to dismiss the facially defective indictments.

3. Whether the trial court erred when it failed to dismiss indictment # 08-S-289 because of a due process violation.

4. Whether the trial court erred when it failed to grant the defendant's requests for a mistrial.

5. Whether the trial court erred when it failed to grant the defendant's motion to dismiss because of a speedy trial violation.

6. Whether the trial court erred when it failed to grant trial counsel's request for additional discovery.

7. Whether the trial court erred by allowing the State to reference evidence it had deemed inadmissible.

8. Whether the trial court erred by failing to exclude the testimony of Katie Wilmont.

9. Whether the trial court erred by failing to recuse itself from these proceedings.

10. Whether the trial court erred when it included a no contact order with Mr. Towle's [minor son] who was not a victim in the case, as part of its sentence.

Apr. 3, 2013 NOMA, Towle Crim. (Doc. No. 8-1).

Towle's appellate counsel briefed issues two and ten on direct appeal, as well as the question of whether the trial court erred in allowing the prosecutor to refresh J.T.'s recollection, which was not listed in the NOMA. Counsel declined to brief the other issues listed in Towle's NOMA, and

further declined to brief two additional issues that Towle had

asked him to brief.[11]

After his convictions were affirmed on direct appeal, Towle

filed his MTV II in the trial court, asserting the claim

identified here as Claim 12, and stating that as a result of

appellate counsel's provision of ineffective assistance of

counsel, Towle's Sixth and Fourteenth Amendment rights had been

violated.  In its order denying the MTV II, the CCSC examined

Towle's ineffective assistance of appellate counsel claim under

the Strickland standard, and under the analogous state law

standard, and stated:

> The Court finds that the defendant was not denied
> effective assistance of appellate counsel.  The
> defendant contends that he was denied effective
> assistance of counsel because his appellate attorney
> refused to pursue and brief the issues that the
> defendant describes in claims Three through Eleven of
> his motion.  This Court has already determined that
> claims Three through Eleven are without merit.
> Consequently, the [New Hampshire] Supreme Court would
> have affirmed the defendant's convictions even if his
> appellate attorney had raised and briefed those
> issues.  Appellate counsel's failure to present issues
> on appeal that would not have succeeded cannot
> constitute ineffective assistance of appellate
> counsel.

Sept. 30, 2015 Order, Towle Crim. (Doc. No. 9-2, at 5-6).

Showing that a decision not to brief an issue fell below an

objective standard of reasonableness is difficult, because

---

[11]Neither of the two additional issues Towle asked appellate
counsel to brief in his direct appeal are relevant to the
Court's consideration of any of the claims asserted in Towle's
Petition.

"appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000).[12] Moreover, as to issues not raised, it is generally the case that "'only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (citation omitted).

Because the CCSC decided Towle's ineffective assistance of appellate counsel claim on its merits, the appropriate standard of review here is deferential. Under Strickland, a petitioner claiming ineffective assistance of counsel must show both that counsel's representation fell below an objective standard of reasonableness, and that prejudice resulted. See id., 466 U.S. at 687-88. In determining that Towle was not denied the effective assistance of appellate counsel, the CCSC appropriately applied the Strickland standard, and the court's determination that Towle's Sixth Amendment right to the effective assistance of counsel had not been violated by appellate counsel's refusal to brief nonmeritorious claims was

---

[12]In his state and federal pleadings, Towle relies heavily on the Supreme Court's opinion in McClesky v. Zant, 499 U.S. 467 (1991) to support his argument that appellate counsel was required to investigate and present all viable claims on direct appeal. McClesky, however, was a pre-AEDPA case that addressed abuse of the writ of habeas corpus, not ineffective assistance of appellate counsel. See id. It is, therefore, inapposite.

consistent with that standard.  Further, the CCSC did not

unreasonably determine the facts in light of the record before

it, concerning matters relating to Claim 12.  Accordingly, this

court grants Respondent's motion for summary judgment (Doc. No.

139) as to that claim.


### 3.  Claim 18

In his Petition Towle asserted the following claim, which

the Court has identified as Claim 18:

> 18. Towle's Sixth and Fourteenth Amendment rights were
> violated when he was denied the effective assistance
> of trial counsel, when counsel: (a) failed to question
> prospective jurors concerning their biases, (b) did
> not properly utilize peremptory and for-cause
> challenges to remove biased jurors from Towle's jury,
> and (c) did not properly raise, and preserve for
> appeal, issues concerning jury selection.

Jan. 16, 2018 R&R (Doc. No. 100, at 4) (approved by Feb.

15, 2018 Order (Doc. No. 117)).  Towle raised these claims

in a petition for writ of habeas corpus (Doc. No. 70-1),

filed in the MCSC.  See Oct. 8, 2015 Pet. for Writ of

Habeas Corpus, State Habeas (Doc. No. 70-1).

The MCSC denied the petition, finding that trial

counsel did not render ineffective assistance during jury

selection.  See id., Apr. 14, 2106 Order (Doc. No. 68-1).

Towle appealed that decision.  See id., July 14, 2016 NODA

(Doc. No. 160-1, at 1).  The NHSC declined the appeal.  See

Order, <u>Towle v. Warden, N.H. State Prison</u>, No. 2016-0380

(N.H. Sept. 14, 2016) (Doc. No. 67, at 23).

The MCSC's Order included the following relevant factual

background:

> During jury selection, Petitioner employed Attorney
> Joseph Fricano to fully represent him with the
> understanding that Attorney Fricano's role would
> change to one of stand-by counsel during trial.
> During the general questioning to the whole jury panel
> in open court, the judge asked:
>
>> Are you now, or have you ever been, police
>> officers or engaged in law enforcement, or a
>> member of any police commission, or are you in
>> any way related to persons engaged in law
>> enforcement activity?
>>
>> Do you believe the testimony of a police officer
>> is entitled to more weight or less weight than
>> the testimony of any other witness because he or
>> she is a police officer?
>>
>> Do you know any reason whatsoever why you cannot
>> sit and hear the evidence in this case and render
>> a true and honest verdict under your oath,
>> according to the facts as you find them to be,
>> and in accordance with the law as the Court will
>> give it to you?
>
> (Trial Tr. 37:21-38:19, Jan. 11, 2013).
>
> . . .
>
> Attorney Fricano exercised three peremptory challenges
> to two jurors for whom he had voiced cause challenges,
> Juror Nos. 20 and 54, and one for whom he had voiced
> no objection, Juror No. 55.  In doing so, Juror No.
> 65, whom Attorney Fricano had challenged for cause,
> remained on the jury.
>
> Juror No. 24[FN 1] was seated on the jury.  At the
> bench, she revealed that her brother, brother-in-law,
> nephew and niece's husband are or formerly were
> members of law enforcement in California, but she
> rarely communicates with them.  (Trial Tr. 63:6-10.)

After she stated she could be fair and impartial, the trial court found her qualified. (Trial Tr. 63:21-25.) Mr. Fricano did not question her at the bench or challenge her service for cause.

Juror No. 35 also sat on the jury. He advised that he knew one of the trial witnesses, Det. Karl Nelson. . .

. . .

After Juror No. 55 affirmed he could be fair and impartial despite the connection, the trial court found him qualified. (Trial Tr. 75:20-76:6.) However, Attorney Fricano later used a peremptory challenge to excuse him.

Attorney Fricano used a second peremptory challenge on Juror 20, who . . . he had moved to strike . . . for cause. Juror No. 20 was a sergeant with the Littleton Police Department and had investigated numerous sex offenses. (Trial Tr. 67:5-8.)

. . .

Attorney Fricano used a third peremptory challenge on Juror No. 54, whom the trial court declined to strike for cause. Juror No. 54 was an elementary school teacher who had a witness's granddaughter in her classroom, but otherwise had no dealings with any witnesses and indicated the association would not impact her ability to serve fairly. (Trial Tr. 81:10-20.)

. . .

Following jury selection and on the next day of trial, Petitioner filed a motion for an expedited transcript of jury selection so he could review the bench conferences. The trial court held a hearing on his request.

. . .

During the hearing, Attorney Fricano stated that he reviewed the entire jury list with Petitioner prior to jury selection, which would have included some information as to law enforcement contacts, and that he also conveyed all the relevant voir dire bench discussions to Petitioner during the course of jury

selection and afterwards. (Tr. Vol. 2, 200:1-19.)
Petitioner also acknowledged that Attorney Fricano
gave him "a summation of what was disclosed at the . .
. bench." (Tr. Vol. 2, 204:23-205:1.) The trial
court then denied Petitioner's request for the
transcript. (Tr. Vol. 2, 206:11-12.)

> [FN 1:] Juror No. 24 is listed incorrectly as
> Juror No. 26 in the trial transcript.

Apr. 14, 2106 Order, <u>State Habeas</u> (Doc. No. 68-1, at 2-9 & n.1).

Applying the two-pronged <u>Strickland</u> standard, the MCSC
concluded that trial counsel had not rendered ineffective
assistance in the ways Towle had alleged. <u>See</u> <u>id.</u> at 16-17.
Specifically, the MCSC concluded that counsel was not
ineffective for failing to move to excuse Jurors No. 24 and 35
for cause. <u>See</u> <u>id.</u> Although Attorney Fricano did not question
Jurors 24 and 35, the court found there was adequate questioning
by the trial judge for Attorney Fricano to assess any concern
about the jurors' potential biases. <u>See</u> <u>id.</u> at 19. With
respect to Attorney Fricano's exercise of peremptory challenges,
the MCSC found nothing to suggest he did not make reasonably
competent choices between two qualified jurors. <u>See</u> <u>id.</u> As the
MCSC noted, "a decision had to be made," and Towle offered no
evidence demonstrating that Attorney Fricano's choice to strike
Juror No. 55 was not a reasonable strategic one. <u>Id.</u>

In his objection to Respondent's motion for summary
judgment, Towle reargues the claims raised in his state habeas
petition without identifying any errors of fact or law in the
MCSC's opinion. <u>See</u> May 30, 2019 Pet'r's Obj. to Resp't's Mot.

for Summ. J. (Doc. No. 161, at 31-34). He has neither suggested questions Attorney Fricano should have asked, nor offered any evidence that would have been discovered had more questions been posed of jurors. Finally, to the extent Attorney Fricano failed to preserve these jury issues for appeal, Towle has failed to demonstrate that there is a reasonable probability that his appeal would have been successful had these issues been preserved, raised, and briefed on appeal.

Accordingly, Towle has failed to show that there is no reasonable basis upon which the court can find "that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. The court finds that the MCSC, in evaluating Towle's ineffective assistance claim concerning jury selection, properly applied the Strickland standard to the evidence. Further, nothing suggests that the MCSC unreasonably applied the facts in the record before the state court in reaching its decision. Given that, the court is obliged to defer to the MCSC's ruling. Accordingly, the respondent's motion for summary judgment is granted as to Claim 18.


IV.  Procedurally Defaulted Claims

     A.   Procedural Default Standard

"[A] federal court may not review federal claims that were procedurally defaulted in state court — that is, claims that the state court denied based on an adequate and independent state

procedural rule," Davila v. Davis, 137 S. Ct. 2058, 2064 (2017), if that state procedural rule "is both firmly established and regularly followed." Logan v. Gelb, 790 F.3d 65, 72 (1st Cir. 2015)). "A state court's invocation of a [state] procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." Martinez v. Ryan, 566 U.S. 1, 9 (2012). Respondent "bears the burden '. . . of persuading the court that the factual and legal prerequisites of a default . . . are present.'" Pike, 492 F.3d at 73 (citation omitted).

A federal court cannot review a procedurally defaulted claim in a § 2254 petition unless the petitioner demonstrates either "actual innocence," or "cause" and "prejudice" for the default. Costa, 673 F.3d at 25 (citation omitted); see also Davila, 137 S. Ct. at 2064-65; Lee v. Corsini, 777 F.3d. 46, 62 (1st Cir. 2015).[14] "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" Davila, 137 S. Ct. at 2064-65 (citation omitted). Cause "'ordinarily turn[s] on whether the prisoner can show that

---

[14]Towle has not asserted an actual innocence claim to attempt to overcome the procedural default of any claim in this action.

some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Costa, 673 F.3d at 26 (citation omitted).  To prove prejudice, a petitioner must demonstrate that the violations of federal law "worked to his _actual_ and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Id. (internal quotation marks and citation omitted) (emphasis in original).


    B.   <u>Claims 3 - 11</u>

In his Petition, Towle asserted the following claims, identified by this Court as Claims 3 – 11:

> 3. The trial court erred when it refused to sever the charges for trial.

> 4. The trial court erred when it failed to dismiss facially defective indictments, in that: (a) indictment 08-S-289 did not allege a proper mens rea element of the charged offense; and (b) indictments 08-S-289, 09-S-96-97, and 09-S-104-07 did not allege the proper statutory element of the offenses charged concerning the age of the victim at the time of the offenses; and (c) indictments 09-S-104-07 improperly referred to previous indictments charging Towle with aggravated felonious sexual assault.

> 5. The trial court erred by failing to exclude the testimony of Katie Wilmot because the state failed to provide exculpatory evidence concerning Wilmot's bias and motive to lie.

> 6. The trial court erred when it allowed the introduction of a photograph of the victim as a child, although the victim, an adult at the time of trial, appeared in court and testified, as the photograph had no evidentiary value and was introduced to inflame the passions of the jury against Towle.

7. The trial court erred when it failed to grant Towle's request for additional discovery concerning conversations the prosecution had with a prosecution witness, Katie Wilmot, after the first trial on the charges, in preparation for the new trial.

8. The trial court erred in failing to recuse itself after exhibiting bias against Towle by imposing excessive bail, denying him the right to represent himself at trial, assisting in the prosecutorial function by compelling witness testimony against Towle, making improper evidentiary findings, "being a witness to [Towle's] defense," and exceeding its statutory authority to deprive Towle of his right to familial association.

9. The trial court erred when it failed to dismiss the case when Towle's right to a speedy trial was violated.

10. The trial court erred in denying a mistrial on the basis of prosecutorial misconduct when the state knowingly and repeatedly elicited false testimony from witnesses at trial.

11. The trial court erred by allowing sheriff's deputies, who were in the courtroom during trial, to increase in number, and in their proximity to Towle, creating the impression in front of the jury that Towle was a dangerous person, to his prejudice, where no circumstances justified the increase in the number of deputies or their proximity to Towle.

Aug. 28, 2015 Order (Doc. No. 5, at 2-4). Respondent contends that Claims 3 - 11 are all procedurally defaulted.

Petitioner raised Claims 3 - 11 in his MTV II (Doc. No. 9-1). The CCSC denied Claims 3 - 11 on procedural grounds, holding that Petitioner had waived collateral review by failing to brief those claims on appeal.[15] See Order on MTV II (Doc. No.

---

[15]The court also held that Claims 3 - 11 were without merit. See Sept. 30, 2015 Order, Towle Crim. (Doc. No. 9-2, at at 3)

9-2, at 2-3).  Specifically, the court found that "[b]ecause the defendant had both knowledge of the issues that he now presents in claims Three through Eleven and an opportunity to raise those issues properly in his direct appeal 'but failed to do so, he has procedurally waived the issues for collateral review' in this proceeding."  See Sept. 30, 2015 Order, Towle Crim. (Doc. No. 9-2, at 3).

In its Order denying the MTV II, the CCSC cited Avery v. Cunningham, 551 A.2d 952, 954-955 (N.H. 1988), abrogated on other grounds, State v. Pepin, 982 A.2d 364, 366 (N.H. 2009)), for the proposition that Towle's failure to assert the issues set forth in Claims 3 – 11 on appeal, despite his knowledge of those issues and opportunity to do so "'procedurally waived the issue[s] for collateral review.'"  Sept. 30, 2015 Order, Towle Crim. (Doc. No. 9-2, at 3) (quoting Avery, 551 A.2d at 955).  As noted, the rule described in Avery "is both firmly established and regularly followed" in New Hampshire.  Thurlow v. Warden, N.H. State Prison, No. 16-cv-512-SM, 2019 U.S. Dist. LEXIS 147553, at *25, 2019 WL 4060914, at *9 (D.N.H. Aug. 13, 2019), R&R approved, 2019 U.S. Dist. LEXIS 146367, at *1, 2019 WL 4060930, at *1 (D.N.H. Aug. 28, 2019), appeal filed sub. nom., Thurlow v. Zenk, No. 19-1891 (1st Cir. Sept. 10, 2019); Kepple v. Unknown Warden, N. N.H. Corr. Facility, No. 10-cv-331-LM, 2011 U.S. Dist. LEXIS 110447, at *33, 2011 WL 4452673, at *12 (D.N.H. Sept. 26, 2011).  Therefore, Towle's habeas Claims 3

("[E]ven if the defendant had not waived claims Three through Eleven for collateral review, the Court rules that those claims have no merit.")

47

- 11 are procedurally defaulted.  See Powell v. Tompkins, 783 F.3d 332, 344 (1st Cir. 2015); Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010).  To overcome the default, Towle must demonstrate both adequate cause for the default and that he suffered actual prejudice to his defense as a result.  See Berthoff v. United States, 308 F.3d 124, 127-128 (1st Cir. 2000).

Towle does not address the procedural default argument in his objection (Doc. No. 158) to the respondent's summary judgment motion (Doc. No. 139).  However, in Claim 12 of the Petition, discussed above, Towle claims he was denied the effective assistance of appellate counsel when appellate counsel "(a) refused to brief certain issues concerning the denial of a fair trial, and (b) refused to pursue stronger issues on appeal."  Towle asserts, therefore, that counsel's refusal to assert the issues raised in Claims 3 – 11 on appeal is the "cause" for his procedural default of those claims.

Even if Towle is able to demonstrate that counsel's refusal to brief certain claims was the cause of the procedural default of those claims, he cannot satisfy the prejudice prong of the "cause and prejudice" analysis.  As explained above, this court has already determined that the state court found, applying the appropriate legal standard and reasonably assessing the facts in the record, that Towle's appellate counsel was not ineffective in failing to raise the issues set forth in Claims 3 – 11 on appeal.  Therefore, both the state court and this Court have necessarily determined that Towle was not prejudiced by

counsel's refusal to brief those claims.  Because there was no

prejudice to Towle in counsel's failure to appeal Claims 3 – 11,

he cannot demonstrate cause and prejudice arising from the

default of those claims.

Because Towle has procedurally defaulted Claims 3 – 11 in

the state courts, this Court cannot review those claims.  <u>See</u>

<u>Davila</u>, 137 S. Ct. at 2064.  Accordingly, the respondent's motion for

summary judgment (Doc. No. 139) is granted as to Claims 3 – 11.


   C.   <u>Claims 16(a) and 17</u>

   In his Petition, Towle asserted the following claims, which

the Court has identified as Claims 16(a) and 17:

> 16. Towle's Sixth and Fourteenth Amendment rights were
> violated when the trial court: (a) denied Towle the
> right to be present for individual juror voir dire
> conducted at the bench during jury selection in his
> state criminal case, . . ..
>
> 17. Towle's Sixth and Fourteenth Amendment rights were
> violated when the trial court denied Towle an
> impartial jury in his state criminal case.

Jan. 16, 2018 R&R (Doc. No. 100, at 3) (approved by Feb.

15, 2018 Order (Doc. No. 117)).  Towle raised these claims

in his petition for a writ of habeas corpus filed in the

MCSC.  <u>See</u> Oct. 8, 2015 Pet. for Writ of Habeas Corpus,

<u>State Habeas</u> (Doc. No. 70-1).

   The MCSC denied Towle's habeas petition, finding, as to the

claim asserted here as Claim 16(a), that Towle had sufficiently

preserved the claim for appellate review, but that "the

Petitioner failed to raise it on direct appeal, and therefore is procedurally barred from raising it for collateral review." Apr. 14, 2016 Order, id. (Doc. No. 160-1, at 18). As to Claim 17, the court similarly found that Towle's argument "should have been raised on direct appeal." Id. (Doc. No. 160-1 at 22). Towle argued in the state habeas court, in an effort to excuse his default of those claims, that he was unable to timely appeal his claims concerning jury selection, as he was not in possession of a transcript of the jury selection until after his direct appeal had concluded. See id. As to that argument, the MCSC found:

> [I]t is clear . . . the transcript would have been available to [Towle] had he asked his lawyer. Furthermore, appellate counsel could have expanded the issues raised in the notice of appeal if he discovered additional meritorious issues after reviewing the transcripts. If counsel declined to raise an issue Mr. Towle believed was meritorious, Mr. Towle could have sought leave of the court to raise it himself or proceed pro se. Mr. Towle was well aware that there were discussions at the bench and generally knew the relevant content. His failure to timely request a copy of the transcript from appellate counsel does not give him leave to supplement his appellate counsel's challenges through a collateral attack.

Id. Given the absence of any factors, external to the defense, that prevented Towle from obtaining a transcript, Towle cannot demonstrate that he had "cause" for the procedural default of his claims identified here as Claims 16(a) and 17.

Because Towle defaulted Claims 16(a) and 17 in the state courts, on state law grounds, and failed to demonstrate cause

for his default, this court cannot review those claims.

Accordingly, the respondent's motion for summary judgment (Doc.
No. 133) is granted as to Claims 16(a) and 17.

D.   Claim 26

In his Petition, Towle asserted the following claim, which
this Court has identified as Claim 26:

> 26.   Attorney Joseph Fricano, while he was
> representing Towle in Towle's criminal case, violated
> Towle's Sixth Amendment right to the effective
> assistance of counsel by failing to preserve the
> federal nature of Towle's claim that the trial court
> erred when it refused to sever Towle's criminal
> charges for trial.

June 28, 2018 Order (Doc. No. 127 at 3-4).  Towle raised this

claim in a post-conviction "Motion to Exhaust" filed in the

CCSC.  See Feb. 16, 2018 Def.'s Mot. to Exhaust, Towle Crim.

(Doc. No. 123-1).

The CCSC denied Towle's claim, stating:

> The premise of defendant's current motion is his
> assertion that his trial counsel did not preserve the
> "federal nature" of [this] claim[] and that,
> consequently, the defendant was denied effective
> assistance of counsel as to [this] claim[].  (Def.'s
> Mot. to Ex[haust] ¶¶ 6 - 9.)  The defendant has not,
> however, identified or articulated the alleged federal
> constitutional basis or federal nature of any such
> claim.  The defendant's unarticulated and undeveloped
> arguments do not warrant extended consideration.  See
> State v Brenes, [846 A.2d 1211, 1213 (N.H. 2004)]
> (declining to devote judicial resources to undeveloped
> equal protection argument); State v. Blackmer, [816
> A.2d 1014, 1016 (N.H. 2003)] (observing that "a mere
> laundry list of complaints . . . without developed
> legal argument, is insufficient to warrant judicial
> review") (quotations omitted); Keenan v. Fearon, [543

51

A.2d 1379, 1382 (N.H. 1988)] (noting that "off-hand invocations" of constitutional rights unsupported by argument or authority warrant "no extended consideration").

The CCSC denied Towle's claim asserted here as Claim 26 on the basis that it had not been properly presented to that court under state procedural rules, as it was not articulated and developed in Towle's Motion to Exhaust, which, as set forth in the cases cited by the CCSC in its decision, is a state procedural rule "adequate to support the judgment" of the CCSC denying Towle's motion. Martinez, 566 U.S. at 9. Towle has not made any argument asserting grounds upon which this court could find there was "cause" and "prejudice" for his procedural default of Claim 26. Accordingly, the claim is procedurally defaulted and may not be reviewed by this court. For that reason, the respondent's motion for summary judgment (Doc. No. 133) is granted as to claim 26.


V.   Claims 20 - 24

Towle's claims which this Court has identified as Claims 20 - 24 assert challenges related to the jury instructions given in his criminal trial. Upon review of the pleadings and the record in this case, the court finds that it needs additional briefing on those claims. Accordingly, the respondent's motion for summary judgment is denied as to Claims 20 - 24, without prejudice. The court will issue a separate order with

instructions to the parties.  The parties should not file any additional briefing as to Claims 20 – 24 until after the court orders its instructions.

## Conclusion

For the foregoing reasons the court rules as follows:

1.    The respondent's motion for summary judgment as to Claims 15 – 27 (Doc. No. 133) is granted in part and denied in part, as follows:

   a.  the motion is granted as to Claims 15 – 19, and 26;

   b.   the motion is denied without prejudice as to Claims 20-24; and

   c.   the motion is denied as moot as to Claims 25 and 27.

2.    The respondent's motion for summary judgment as to Claims 1-14 (Doc. No. 139) is granted.

3.    The court will issue a separate order with briefing instructions as to Claims 20 – 24.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

September 30, 2019

cc:  Robert V. Towle, pro se
     Elizabeth C. Woodcock, Esq.