UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robert Towle,
        Plaintiff

        v.                                  Case No. 15-cv-117-SM-AJ
                                            Opinion No. 2026 DNH 103

Warden, New Hampshire State Prison,
        Defendant

**O R D E R**

Petitioner, Robert Towle, filed a habeas corpus petition seeking relief from his present incarceration based upon multiple state-court criminal convictions.  See 28 U.S.C. § 2254.  Of the 27 claims originally advanced in his petition (as amended), five remain unresolved.  On September 16, 2025, the magistrate judge issued a Report and Recommendation (document no. 224) recommending that the court deny any relief on those remaining claims.  Towle objects.  So, too, does the State, but on limited grounds: it does not disagree with the outcome suggested by the magistrate judge, but it does object to the manner in which she treated Towle's claims of ineffective assistance of stand-by counsel.

For the reasons discussed, the court agrees that the remaining claims advanced by Towle must be denied, albeit on

slightly different grounds than those relied upon by the magistrate judge.

**Standards of Review**

I.    The Report and Recommendation.

The court conducts a de novo review of those portions of the magistrate judge's report and recommendation to which a timely objection has been filed.  See 28 U.S.C. § 636(b)(1). See also Warner v. McLaughlin, No. 16-CV-034-JD, 2016 DNH 154, 2016 WL 4544006, at *1 (D.N.H. Aug. 30, 2016).

II.   The Underlying State Court Decisions on Towle's Claims.

A.    Deferential Review of State Court Determinations.

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and its amendments to 28 U.S.C. § 2254, the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless one of two conditions is met.  The first is when the state court's adjudication of the petitioner's federal constitutional claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A habeas petitioner

2

seeking relief under that provision faces a substantial burden insofar as "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Alternatively, habeas relief may be granted if the state court's resolution of the federal constitutional issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The Supreme Court explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> [T]he most important point is that an unreasonable application of federal law is different from an incorrect application of federal law . . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).  Finally, it probably bears noting that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is "contrary to" or involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases - indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original).

So, to prevail, the habeas petitioner must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an

4

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).  In short, "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id. at 102-03 (citation and internal punctuation omitted).  As the Harrington Court noted, AEDPA's amendments to section 2254(d) present a substantial hurdle for those seeking habeas relief and impose upon this court a highly deferential standard of review.

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.

Harrington, 562 U.S. at 102 (citation omitted).


B.    De Novo Review of Unadjudicated Claims.

Only as to federal claims that were presented to the state court but neither adjudicated on the merits nor dismissed by operation of a regularly-applied state procedural rule, may this court apply the more petitioner-friendly de novo standard of review.  See, e.g., Clements v. Clarke, 592 F.3d 45 52 (1st Cir.

2010) ("In contrast, a state court decision that does not address the federal claim on the merits falls beyond the ambit of AEDPA.  When presented with such unadjudicated claims, the habeas court reviews them de novo.") (citation omitted).

Finally, it is probably important to note that "unadjudicated claims" are different from claims that were resolved on the merits, but without any explanation.  See generally Wilson v. Sellers, 584 U.S. 122, 125 (2018) ("[W]hen the relevant state-court decision on the merits, say, a state supreme court decision, does not come accompanied by [any] reasons . . . . [w]e hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.) (emphasis supplied).  See also Harrington, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.  And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d).  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals

which of the elements in a multipart claim it found

insufficient, for § 2254(d) applies when a "claim," not a

component of one, has been adjudicated.").


C.    Standard Applicable to Towle's Claims.

Here, the magistrate relied upon two decisions from the

state superior court (the "state habeas court") that denied the

remaining claims advanced by Towle.  See Notice of Decision

(document no. 91-2) and Notice of Decision (document no. 91-9).

Those orders related to what have been referred to as Towle's

"Motion to Vacate IV" and his "Motion to Vacate V," as amended.

The New Hampshire Supreme Court declined to accept Towle's

discretionary appeals of those decision without explanation.

Consequently, the magistrate judge concluded that the last

"reasoned" state court decisions addressing the merits of

Towle's claims were those of the state habeas court.  But, in

those opinions, the court did not detail its reasons for denying

Towle's claims.  Instead, it adopted as its own reasoning that

which was put forward in the State's objections to Towle's

petition.  See Documents no. 91-2 and 91-8 (both of which use

language like: "Denied.  See State's objection.").  So, the

magistrate judge examined the reasoning set forth in the State's

objections, found that it was more than adequate (indeed, she

found it was legally correct and entirely consistent with

7

Supreme Court precedent), and recommended that the court deny relief on all of Towle's remaining claims.

Subsequently, by order dated March 30, 2026 (document no. 243), the court called the parties' attention to a more recent state court decision that addressed the claims raised in Towle's habeas petition but which had not been filed with the court or discussed by the parties. See Id. at 2 (referencing both Towle's "Motion to Vacate VI" and the state habeas court's decision denying that motion). See also Id. at 4-7 (attaching a copy of the Superior Court's "Order on Defendant's Motion to Vacate VI").

In response, the State agreed that the state habeas court's decision resolving Towle's "Motion to Vacate VI" was, indeed, the last reasoned state court decision addressing the claims in Towle's petition. While Towle "objected," he largely took issue with certain representations made in the State's filing; he did not articulate any reason the court should not treat the state habeas court decision on his Motion to Vacate VI as the last reasoned decision on his remaining claims. Consequently, the New Hampshire Superior Court's decision resolving Towle's "Motion to Vacate VI" (document no. 243, at 4-7) is the last reasoned decision resolving the merits of the claims that remain

8

in Towle's pending federal habeas court.  This court will review

that decision applying section 2254's deferential standard of

review discussed above.


## Background

A New Hampshire jury convicted Towle on multiple charges

for his role in the long-standing sexual abuse of his minor son.

Of the eight charges on which Towle was convicted, those

relevant to his remaining habeas claims alleged the following:

> 08-289    Aggravated Felonious Sexual Assault, in
> violation of N.H. Rev. Stat. Ann. ("RSA") 632-A:2
> I(j)(2), and charging that between February 1, and
> April 30, 2006, Towle purposely engaged in sexual
> penetration (fellatio) with J.T., who was not his
> spouse and who was less than 16 years old at the time
> of the assault and the defendant was related to JT by
> blood or affinity.
>
> 09-96    Aggravated Felonious Sexual Assault, in
> violation of RSA 632-A:2 III, and charging that during
> the two year period between January 1, 2004, and
> January 30, 2006, Towle knowingly engaged in a pattern
> of sexual assault on JT who was not his spouse and who
> was less than 16 years old, by performing fellatio on
> JT on more than one occasion in a period of over 2
> months and within a five year period.
>
> 09-97    Aggravated Felonious Sexual Assault, in
> violation of RSA 632-A:2 I and III, and charging that
> between January 1, 2004, and January 30, 2006, Towle
> knowingly engaged in a pattern of sexual assault on JT
> who was not his spouse and who was less than 16 years
> old, by having JT perform fellatio on him on more than
> one occasion in a period of over 2 months and within a
> five year period.

9

See Indictments (document no. 92-1) (emphasis supplied).

What remains of Towle's original habeas corpus petition are five claims (which the court has labelled claims 20 through 24). Three challenge the jury instructions provided by the trial court and two challenge the effectiveness of Towle's counsel:

20.   That his Sixth and Fourteenth Amendment rights were violated when, as to each of the two pattern aggravated felonious sexual assault charges against him, the trial court omitted an element of the offense from its jury instructions.

21.   That his Fifth, Sixth and Fourteenth Amendment rights were violated when the trial court's jury instructions permitted the jury to find that Towle was guilty, without the jurors having unanimously agreed on the acts that satisfied a variant element of two pattern aggravated felonious sexual assault charges, where the pertinent variant was what differentiated the two charges.

22.   That his Fifth and Fourteenth Amendment rights were violated when the trial court's jury instructions allowed him to be convicted of three charges concerning fellatio, in violation of his right not to be twice placed in jeopardy for a single offense.

23.   Towle's Sixth and Fourteenth Amendment rights were violated when he was denied the effective assistance of trial counsel, when counsel failed to properly raise and preserve any claim related to Towle's challenges to the trial court's jury instructions in his criminal case, the substance of which are set forth . . . in Claims 20-22.

24.   Towle's Sixth and Fourteenth Amendment rights were violated when he was denied the effective assistance of appellate counsel, when counsel failed to properly raise, on appeal, any claim related to Towle's challenges to the trial court's jury

instructions in his criminal case, the substance of which are set forth in Claims 20-22.

See Report and Recommendation dated Jan. 16, 2018 (document no. 100) at 4-5, approved by Order dated Feb. 15, 2018 (document no. 117).

## Discussion

I.   Towle's Petition and the Governing Standard of Review.

As noted above, the state superior court's decision resolving Towle's "Motion to Vacate VI" is the last reasoned state court opinion addressing Towle's remaining claims.  It is, then, subject to the deferential standard of review discussed above - that is, Towle must demonstrate that the state habeas court's order resolving his federal constitutional claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Towle does not press any factual challenges to the state habeas court's decision that might be subject to section 2254(d)(2).

II.   Challenges to the Jury Instructions.

In claims 20, 21, and 22 of his petition, Towle challenges the trial court's instructions to the jury.  The state habeas court rejected those claims on two separate grounds.  First, it

11

held that Towle's claims were procedurally waived.

Specifically, the court held that:

> With respect to the defendant's claims of error concerning the form and content of the jury instructions, the Court denies those claims for two separate reasons.  First, the Court finds that the defendant has procedurally waived these issues for collateral review in this proceeding.  A motion to vacate, like a petition for writ of habeas corpus and a motion for new trial, is not a substitute for an appeal.  A procedural default may preclude later collateral review.  A party who has both knowledge of the issue and an opportunity to raise it properly on direct appeal, but fails to do so, procedurally waives the issue for collateral review.
>
> The defendant had actual knowledge of the issues presented in these claims prior to his direct appeal. He could have raised them in his direct appeal but failed to do so and therefore waived those issues. Because the defendant had both knowledge of the claims of error concerning the jury instructions and an opportunity to raise those issues properly in his direct appeal but failed to do so, he has procedurally waived the issues for collateral review in this proceeding.

Order on Defendant's Motion to Vacate VI (document no. 243), at 5-6 (citations and internal punctuation omitted).

The procedural default doctrine provides that a federal court will not consider a claim for habeas relief that was rejected by a state court for failure to comply with that court's procedural requirements, Coleman v. Thompson, 501 U.S. 722, 732 (1991), provided those procedural requirements amount

12

to "a firmly established and regularly followed state practice," Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (internal quotation marks omitted).  See generally Martinez v. Ryan, 566 U.S. 1, 9 (2012) ("A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed.").  The procedural default doctrine is, then, a "corollary to the habeas statute's exhaustion requirement," Dretke v. Haley, 541 U.S. 386, 392 (2004), and is based on the principle that, before a federal court intervenes, the state's highest court should be given an opportunity to address a petitioner's federal constitutional claims.  See, e.g., Coleman, 501 U.S. at 732 ("a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.").  Consequently, the Supreme Court has held:

> In all cases in which a state prisoner has defaulted
> his federal claims in state court pursuant to an
> independent and adequate state procedural rule,
> federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation
> of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental
> miscarriage of justice.

13

Id. at 750.  Here, Towle has shown neither cause for his failure to challenge the jury instructions in his direct appeal, nor has he or can he show prejudice (since, as discussed more fully below, those claims lack merit).  Consequently, he cannot pursue those claims in a federal habeas corpus petition.  See generally Hart v. Warden, N.H. State Prison, No. 18-CV-424-SM, 2020 WL 2128869, at *8 (D.N.H. May 5, 2020); Ayer v. Warden, New Hampshire State Prison, No. 07-CV-304-SM, 2015 WL 1825813, at *5–6 (D.N.H. Apr. 22, 2015).

Next the state habeas court concluded that even if Towle's claims related to the jury instructions had not been procedurally defaulted, those claims lack any substantive merit.

> [E]ven if the defendant has not procedurally waived his claims concerning the challenged jury instructions, the Court rules that those claims are without merit.  Having reviewed the relevant indictments (including the time frames in which each indictment asserts the defendant engaged in the charged conduct) and the form and content of the jury instructions on each indictment, the Court concludes that the challenged jury instructions did not deprive the defendant of jury unanimity or violate double jeopardy principles and that they correctly instructed the jury on these indictments and state and explain to the jury, in clear and intelligible language, the rules of law applicable to the charges.

Order on Defendant's Motion to Vacate VI at 3.

14

In her Report and Recommendation, the magistrate judge discusses - in detail and correctly - the jury instructions given by the trial court.  That discussion need not be repeated.  See Report and Recommendation (document no. 224) at 13-17.  It is sufficient to note that the state habeas court's resolution of Towle's challenges to those instructions was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  See 28 U.S.C. § 2254(d)(1).[1]

III. Challenges to Counsel's Representation.

Having concluded that the trial court's instructions to the jury were entirely proper, the state habeas court necessarily concluded that Towle's counsel did not provide constitutionally deficient representation by failing to

---

[1]   Parenthetically, the court notes that in her review of Towle's five remaining habeas claims, the magistrate judge applied what was, in practice, de novo review and resolved those claims on the merits.  See, e.g., Report and Recommendation at 14 ("Mr. Towle's conviction and sentence on 08-289 and the two Pattern AFSA charges at issue did not implicate his Fifth Amendment right not to be twice punished for the same offense."); id. at 16 ("Accordingly, the CCSC's decision, finding no merit in the MTVs as to the arguments asserted in Claims 20 and 21, is consistent with the Supreme Court's holding in Blockburger).  Nevertheless, even applying that more "petitioner friendly" review of Towle's claims, she (properly) concluded that they lacked any substantive merit.

15

challenge those instructions.  See Order on Defendant's Motion to Vacate VI, at 3 ("Because there was no error in the challenged jury instructions, standby counsel was not ineffective in the assistance he rendered to the defendant in connection with them.").  That was an entirely proper (and logical) conclusion.  Under Strickland's two-pronged analysis, if the trial court's resolution of the underlying issue was legally correct, then counsel's failure to challenge that resolution on appeal cannot, as a matter of law, constitute deficient performance and, necessarily, the defendant cannot demonstrate prejudice.

### Conclusion

For the foregoing reasons, the court adopts the conclusions and recommendation of the magistrate judge's Report and Recommendation (document no. 224), though not necessarily for the reasons given.  Treating the state habeas court's decision denying Towle's "Motion to Vacate VI" (which was not before the magistrate judge) as the last reasoned state court decision on his claims and applying the governing deferential standard of review to that opinion, it is plain that the state habeas court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  See,

16

e.g., Harrington, 562 U.S. at 102 ("As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." (emphasis supplied). Towle's claims fall significantly short of that mark.

Towle's petition for habeas corpus, as amended, (**document no. 1**) is, therefore, necessarily denied. His Motion to File a Reply (**document no. 249**) is granted and the court has considered that filing. All other pending motions (to include **documents no. 244** (motion to stay), **246** (motion for Timeframe on Ruling), **and 256** (motion for a more definitive response)) are denied as moot. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 4, 2026

cc:  Robert V. Towle, pro se
     Counsel of Record

17